BOSTON TOW BOAT CO. v. CHASE MACH. CO.

(Circuit Court of Appeals, Sixth Circuit.   December 3, 1901.)

No. 897.

PATENTS—INFRINGEMENT—TOWING MACHINE.

    The Shaw and Spiegle patent, No. 383,917, for a towing machine, describes a combination of a cable drum, an engine, the shaft of which is geared to the drum, and a valve located in the steam passage to the engine cylinder or cylinders, and operatively connected with the shaft of the drum, whereby the pressure in the engine cylinder is increased as increased strain on the cable causes the same to be paid out, and diminished as the strain is lessened and the cable hauled in.   In order to perform such function, and to render the device operative, the valve of the combination must necessarily be what is technically known in mechanics as a pressure-regulating valve, and the patent is not infringed by a combination in which an ordinary throttle valve is used.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

Harvey D. Goulder and George B. Marty (S. H. Holding and Frank S. Masten, of counsel), for appellant.

John O. Winship (Albert E. Lynch, of counsel), for appellee.

Before LURTON and SEVERENS, Circuit Judges, and WING, District Judge.

WING, District Judge.   In letters patent No. 383,917, issued to T. Jackson Shaw and John M. Spiegle, assignors of the appellant, which is the foundation of the bill in this case, claim 1 is chiefly relied upon, and is as follows:

"(1) In a towing machine, the combination, with a cable drum, of an engine, the shaft of which is geared to said drum to balance the load on the cable, and a pressure-regulating valve located in the steam passage to the engine cylinder or cylinders, and operatively connected with the shaft of said drum, whereby the pressure of the engine cylinder or cylinders is increased, as increased strain on the cable causes the latter to be paid out, and is diminished as the strain on the cable is lessened and the latter is hauled in, substantially as set forth."

The invention described and claimed in the patent referred to, according to the construction put upon it by counsel for the appellant, consists of the combination, in a towing machine, of a cable-drum, an engine, the shaft of which is geared to the drum, and a valve located in the steam passage to the engine cylinder or cylinders, which is adapted to be operated by the motion of the drum, whenever motion is imparted to it; and the valve covered in the claim for this combination, although designated as a "pressure-regulating valve," is an ordinary throttle valve. It is urged by the appellee that a pressure-regulating valve is a well-known device in mechanics, by means of which a different degree of steam pressure may be maintained on either side of the valve; and that, because the appellee has used no such valve in its combination, it does not infringe. If we should yield to the contention of the appellant, and concede that the valve forming a part of the combination claimed in its patent is an ordinary throttle valve, we should have to conclude that the device could not perform the functions described in the specifications. It is said in the specifications:

"When one vessel is being towed by another in a turbulent sea, the tow line, cable, or hawser is subjected to sudden alternating degrees of tension, consequent upon the changing relations of the vessels to each other as they ride upon the waves or settle in the troughs of the sea, and the sudden strains on the cables are sometimes so enormous as to be beyond the endurance of the cables, and the latter are, therefore, liable to be broken. The object of our invention is to obviate this difficulty. This object we accomplish by providing a balancing cable drum, the balancing being effected by a steam or air engine so geared to the drum that the normal pressure of the engine cylinder or cylinders will balance the normal strain on the cable; but if the strain on the latter be suddenly increased the cushioning effect of the steam or air in the engine cylinder or cylinders will permit the cable to 'pay out' somewhat, and thus yield to the sudden strain, thereby rendering the action of the cable yielding or elastic. To counterbalance the increased strain on the cable, we provide a pressure-regulating valve, which is geared to the shaft of the cable drum and connected with the engine cylinder or cylinders, so that when the strain on the cable causes the latter to pay out the turning of the drum shaft will increase (by means of the regulating valve) the pressure in the said cylinders, and thus quickly counteract the tendency of the cable to pay out, and when the lessening strain on the cable permits the drum to be turned (by the pressure regulating of the engine cylinder or cylinders) the reverse movement of the drum shaft will reverse the screw of the regulating pressure valve to bring the pressure down to equalize the lessening strain on the cable."

We learn, from this description of the operation of the device, that the patentees assumed that the normal condition of the engine would be one of enforced rest; that is, steam would be admitted from the boiler to the cylinder of the engine, so that there would be reciprocal motion of the piston, as in ordinary operating engines, except for the strain upon the drum by the tension of the hawser used in tow-

ing. It is a perfectly plain principle of physical science that, under the conditions described, the pressure in the cylinder against the piston head would be precisely the same, per square inch, as existed in the boiler. The boiler, the connecting steam pipe, and the cylinder would form one receptacle for the steam generated. The area in square inches of the piston head, multiplied by the steam pressure per square inch, would be the force exerted by the engine to operate the drum so as to wind up the cable. If the strain upon the cable, due to the pulling weight of the vessel towed, should be greater than the power of the engine, plus friction, the cable would be drawn out, the drum revolved, and the engine, by means of its gearing with the drum, made to turn backwards against its insufficient steam pressure. If the pull upon the cable, occasioned by the vessel in tow, should be less than the power of the engine, the engine would be put in motion by its supply of steam, and the drum operated so as to wind up the cable and draw the vessels nearer together. When the pull occasioned by the vessel in tow is just equal to the power of the engine, plus friction, all parts of the device will remain in a state of enforced rest, or equilibrium; or, in the words of the specification, "the normal pressure of the engine cylinder or cylinders will balance the normal strain on the cable." With such a device, whenever the cable or hawser should be subjected to a strain greater than the normal power of the engine, plus friction, the hawser would be continuously drawn out until such strain should cease, or be lessened below the power of the engine. The power of the engine being measured by the steam pressure of the boiler, there could be no additional power imparted to the engine by means of a throttle valve, to counterbalance the increased strain upon the towline. On page 148 of the record, in the cross-examination of the appellant's expert, the following questions and answers appear:

"Q. 73. If you have a steam boiler, the gauge upon which shows a pressure of 150 pounds to the square inch, and you lead a pipe from said boiler to a closed container, what will be the pressure in the second vessel when it is full of steam? A. When the second vessel becomes filled with steam from such boiler, and no more steam can enter, the pressure in the second vessel will naturally be the same as in the boiler. Q. 74. Then, if the pressure in your boiler is 150 pounds, and a pipe leads from that boiler to your engine cylinder, and has been keeping the supply of steam constant in that cylinder, the engine being at rest, the pressure in the cylinder will be 150 pounds also, will it not? A. Provided there is no escape for the steam from the engine cylinder, yes. Q. 75. And this will be true whether the throttle valve is but slightly open or open to its fullest extent? This is true, is it not? A. It is. Q. 76. So that when the engine is at rest balancing the load, and you have 150 pounds pressure in the boiler and 150 pounds pressure in the cylinders, it is a physical impossibility to increase the pressure in the cylinders by opening the throttle valve to a greater extent? A. Decidedly, yes."

In line 32 of the specifications, it is said:

"To counterbalance the increased strain on the cable, we provide a pressure-regulating valve, which is geared to the shaft of the cable drum, and connected with the engine cylinder or cylinders, so that when the strain on the cable causes the latter to pay out the turning of the drum shaft will increase (by means of the regulating valve) the pressure in the said cylinders, and thus quickly counteract the tendency of the cable to pay out."

It is plain that the function of the valve described in this quotation could not be performed unless, by means of it, the pressure of steam or air in the cylinder of the engine could be increased above the normal pressure. This result could be accomplished, providing the valve claimed in the combination were of a character to establish and preserve in the engine, when at rest, a pressure of steam less than the boiler pressure, but sufficient to balance the normal pull on the tow line, and also having the additional function of susceptibility to regulation so that the greater pressure maintained in the boiler could be drawn upon to increase the pressure in the cylinder. But the only valve adapted to do this is the valve known in mechanics as a regulating valve, or pressure-regulating valve, which, admittedly, forms no part of the combination used by the appellee.

It is not important to consider whether the character of pioneer inventors should or should not be imputed to Shaw and Spiegle, because, by the interpretation which we give to claim 1, it is limited to devices in which part of the combination is what is technically known in mechanics as pressure-regulating or reducing valves.

The second, third, fourth and fifth claims are repetitions of the first claim, with additional elements in the combination.

We find that no claims of the appellant's patent have been infringed, and the decree of the court below is affirmed.